# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5684 | **DATE** | 11/25/2002 |
| **CASE TITLE** | ROBYN FREDERICK vs. WILLIAM D. HENDERSON, | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Defendant's motion for summary judgment on Counts IV and V of Plaintiff's Complaint is granted. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 2 7 2002 | |
| | Notified counsel by telephone. | | date docketed | 49 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| EF | courtroom deputy's initials | | mailing deputy initials | |

CLERK, U.S. DISTRICT COURT

02 NOV 26 PM 1:06

Date/time received in central Clerk's Office

NOV 2 7 2002

ROBYN FREDERICK, )
)
Plaintiff, )
)
v. ) No. 98 C 5684
)
) HONORABLE CHARLES R. NORGLE
WILLIAM D. HENDERSON, )
POSTMASTER GENERAL )
OF THE UNITED STATES, )
) NOV 2 7 2002
Defendant. )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant's Motion for Summary Judgment on Counts IV and V of

Plaintiff's Complaint. For the following reasons, the motion is granted.

### I. BACKGROUND

On March 18, 1995, Plaintiff, Robyn Frederick, began working as a mail carrier for the

United States Postal Service ("USPS") at a postal facility located in Phoenix, Arizona ("Phoenix

Office"). On June 15, 1995, while employed at the Phoenix Office, Frederick successfully

completed a 90-day probation period. Shortly thereafter, Frederick sought a transfer to a postal

facility located in Aurora, Illinois ("Aurora Office"). Frederick called the Aurora Office and

spoke to Greg Morrow, the Supervisor of Customer Services. Morrow informed Frederick she

could transfer to the Aurora Office and keep her status as a non-probationary employee.

Frederick informed her supervisors at the Phoenix Office of this conversation about transfer, but

the Phoenix Office supervisors denied her request to transfer. Under USPS rules, an employee is

eligible for a transfer only if she is classified as a career employee. (Def.'s Mot. for Summ. J.,

49

Ex. 6 at 2.) USPS defines a career employee as an employee with at least one year of service with USPS. See id. Because Frederick had not yet completed one year of service with USPS, she was ineligible to transfer to the Aurora Office, and on July 30, 1995, Frederick resigned from her position at the Phoenix Office. On August 5, 1995, Frederick began working at the Aurora Office.

At the time Frederick began working at the Aurora Office, Richard J. Hickey was the Postmaster, Gary Cole was the General Supervisor, and Samuel Jiardini was the Acting Supervisor of Customer Service. Unaware of her resignation, both Cole and Hickey believed Frederick was a transfer employee. Because of this belief, Aurora Office supervisors did not require Frederick to complete a second probation period or submit to the drug test required of all newly hired employees.

In Illinois, the Postal Service facility located at 6801 West 73rd Street in Bedford Park is the headquarters for the Central Illinois District, formerly the South Suburban Division ("South Suburban"). South Suburban oversees 181 postal facilities, including the Aurora Office.

In mid-August, South Suburban informed the Aurora Office that Frederick was not a transfer employee, but instead was a newly hired employee. South Suburban requested that the Aurora Office require Frederick to complete another 90-day probation period. In response, on August 16, 1995, the Aurora Office terminated Frederick's employment with USPS and informed Frederick that she could immediately start as a newly hired employee after submitting to a drug test and completing a second 90-day probation period. Frederick submitted to the drug test and immediately began serving a second 90-day probation period.

During Plaintiff's second 90-day probation period with USPS, the Aurora Office did not

2

give her any additional training. The Aurora Office sent her on mail routes just as if she was a non-probationary employee. On or about September 18, 1995, Cole gave Frederick her 30-day review.[1]

While driving a mail truck on September 19, 1995, Frederick was involved in a vehicle accident while on duty as a probationary mail carrier. Frederick denied responsibility for the accident. Jiardini investigated the accident scene, spoke to a passenger in the other vehicle involved, examined the vehicle damage, and concluded that the accident could not have happened as Frederick claimed. On September 21, 1995, pursuant to an unwritten South Suburban policy, Hickey terminated Frederick for her involvement in this vehicle accident.

After USPS terminated Frederick as a postal employee, Frederick filed a five-count Complaint against Defendant William D. Henderson, Postmaster General of the United States. In her Complaint, Frederick alleges that Defendant violated her Fifth Amendment due process rights ("Count I"), violated her Fourth Amendment right to be free from unreasonable searches and seizures ("Count II"), breached an employment contract ("Count III"), and discriminated ("Count IV") and retaliated ("Count V") against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. In a previous ruling, the Court dismissed Counts I, II, and III pursuant to Federal Rule of Civil Procedure 12(c). (See Amended Order dated August 24, 2000.) The court now considers USPS's Motion for Summary Judgment. as to Counts VI and V of Frederick's Complaint.

---

[1] The Court finds that a non-material factual dispute exists as to whether Defendant prepared this review prior to Plaintiff's termination on September 21, 1995. (See Def. Mot. for Summ. J., Ex. 1 at 63.) Thus, for purposes of this motion, the Court assumes that Defendant did not complete Plaintiff's 30-day performance review until after Plaintiff's termination. See Fed. R. Civ. P. 56(c).

# DISCUSSION

## A.    Standard for Summary Judgment:

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Educ. Servs. Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries, Ltd.,117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must

make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), see also First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994) (citing Anderson, 477 U.S. at 249-50; 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712, at 574-78 (2d ed. 1983)). With these principles in mind, the Court examines Defendant's motion.

**B.    Plaintiff's Title VII Discrimination Claims (Count IV):**

In Frederick's response to USPS's Motion for Summary Judgment, Frederick claims she suffered seven different adverse employment actions: that USPS (1) terminated Frederick on August 16, 1995 without notice and forced her to submit to a drug test; (2) placed her on a second 90-day probation period after she worked for the Aurora Office for two weeks; (3) failed to train Frederick or inform her of her duties as a probationary employee; (4) failed to perform a 30-day performance review; (5) employed a supervisor, Fred Alvis, who stated to Frederick "that is the problem with women, they always want to get ahead;" (6) employed a supervisor, Sam Jiardina, who informed Frederick would be fired if she filed a Worker's Compensation claim; and (7) terminated Frederick for her involvement in the September 19, 1995 vehicle accident.    Frederick brings each claim as an individual claim for disparate treatment. Additionally, Frederick claims that these seven actions, taken together, constitute a hostile work environment.    The Court will first address each action by itself to determine whether it

constitutes an actionable Title VII disparate treatment claim. The Court will then consider all of the events together to determine whether the aggregate constitutes an actionable Title VII hostile work environment claim.

### 1. Title VII - Disparate Treatment:

To prevail on a disparate treatment claim, Frederick bears the ultimate burden of proving that USPS intentionally took an adverse employment action against her because of her race and sex. See Cianci v. Pettibone Corp., 152 F.3d 723, 726 (7th Cir. 1998). Frederick can defeat summary judgment by presenting either direct evidence of discrimination, or indirectly through the burden shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). See DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir. 1995); see also Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000) (analyzing the McDonnell-Douglas test in an ADA/age discrimination case). Frederick chooses to proceed under the indirect McDonnel-Douglas burden shifting analysis. (See Pl. Mem. in Supp. of her Resp. to Def. Mot. for Summ. J., p. 7.) Therefore, to establish her *prima facie* case, Frederick must present factual evidence demonstrating that: (1) she is a member of a protected class; (2) she was meeting USPS's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) USPS treated similarly situated employees outside of the protected class more favorably than she. Robin, 200 F.3d at 1090. Once Frederick establishes her *prima facie case*, a rebuttable presumption is created that USPS's reason for the action was based on the "consideration of impermissible factors." See DeLuca, 53 F.3d at 797. "[T]he burden of production (not proof) then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." Sirvidas v. Commonwealth Edison Co., 60 F.3d 375, 377-78 (7th Cir. 1995). If the employer

provides a legitimate business explanation for the action, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for the alleged discrimination. See id. at 378. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well considered." See Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000) (quoting Jackson v. E.J. Brach Corp., 176 F.3d 971, 984 (7th Cir. 1997). The court will not reexamine each personnel decision to determine whether it was proper. Id. The court's "only concern is whether the legitimate reason provided by the employer is in fact the true one." Id.

The parties agree that Frederick, a white female, is a member of a protected class. However, the parties dispute the other three elements of the *prima facie* case. In regard to the second element, for the purpose of this motion, the Court will assume that Frederick, the non-moving party, met USPS's legitimate work expectations. See Fed. R. Civ. P. 56(c). Therefore, the only issues the Court must address regarding Frederick's *prima facie* case are whether any of the seven actions constitute an adverse employment action and whether USPS treated persons outside of the protected class differently from Frederick.

To determine whether Frederick has met the third element of her *prima facie* case of disparate treatment, the Court must determine whether she has presented sufficient evidence showing that USPS's actions were adverse employment actions. An adverse employment action is one that materially affects the terms and conditions of employment. See Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996). A plaintiff can establish an adverse action with evidence of termination, demotion, decrease in salary or benefits, or significantly diminished responsibilities. See id. (citing Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)).

7

The overriding emphasis is that the action must have a *materially* adverse effect on the conditions of employment. See Haugerud v. Amery School Dist., 259 F.3d 678, 690-91 (7th Cir. 2001) (emphasis added). Determining what is materially adverse depends on the facts of each case, and adverse actions can be both blatant and subtle. Id. at 690 (noting that adverse employment actions consist of quantitative and/or qualitative changes in the terms and conditions of employment). But, however broad the field of adverse actions may be, "'not everything that makes an employee unhappy is an actionable adverse action.'" Id. (quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)). There must be some type of material change in the terms and conditions of employment. Id.

To determine whether Frederick has met the fourth element of her *prima facie* case of disparate treatment, the Court must determine whether she has presented sufficient evidence showing that USPS treated persons outside of the protected class more favorably than she. Where a plaintiff claims he was treated more harshly than other similarly situated employees based on a prohibited reason, the "plaintiff must show he is similarly situated with respect to performance, qualifications and conduct." Snipes v. Illinois Dep't of Corrs., 291 F.3d 460, 463 (7th Cir. 2002). "Such a showing normally entails establishing that 'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" Id. (quoting Radue v. Kimberly Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). This showing is required because different employment decisions, when made by different supervisors, can account for any disparity in treatment, particularly when the decision relates to different employees. Id.

The Court will now analyze each of Frederick's individual claims to determine whether she has established a *prima facie* case of disparate treatment. With respect to each claim, if the Court determines that Frederick has established a *prima facie* case, the Court will then analyze whether USPS has offered a legitimate, non-discriminatory reason for its actions. See Sirvidas, 60 F.3d at 377-78. If USPS has offered a legitimate, non-discriminatory reason for its actions, the Court will continue with the McDonnel-Douglass burden shifting analysis to determine whether Frederick has offered sufficient proof showing that USPS's proffered reasons are a pretext for the alleged discrimination. See Sirvidas, 60 F.3d at 378.

**a-b.  August, 16, 1995 Termination, Drug Test, and Second 90-day Probation Period[2]:**

Frederick argues that USPS's act of terminating her employment on August 16, 1995, thereby requiring her to submit to a drug test and complete a second 90-day probation period, is disparate treatment. There is little doubt that the termination of Frederick's employment could constitute a materially adverse change in the terms, conditions, or privileges of her employment. See Crady, 993 F.2d at 136. Thus, for purposes of this motion, Frederick has established the third element of her *prima facie* case of disparate treatment.

However, Frederick fails to offer evidence showing that USPS treated other similarly situated employees differently. Frederick does not offer one instance where USPS has allowed any other non-career service employee to transfer to another postal facility without having to resign her current position. As a result, Frederick is unable to establish the fourth element of her *prima facie* case as to these employment actions. Thus, Frederick's disparate treatment claim

---

[2] In Frederick's brief, Frederick addresses the August 16, 1995 termination and the second 90-day probation period as separate adverse actions. Because both actions were the result of USPS's decision not to accept Frederick as a transfer employee, the Court will discuss the two actions together.

with respect to her August 16, 1995 termination and USPS's subsequent employment actions fails.

Furthermore, even if Frederick could establish a *prima facie* case as to these employment actions, her claim would still fail. USPS's legitimate, non-discriminatory reason for terminating Frederick's employment on August 16, 1995 is based on an established USPS transfer policy. For Frederick to succeed in her claim, she must offer evidence sufficient to convince a reasonable trier of fact that USPS's reason is a pretext. See Sirvidas, 60 F.3d at 377-78. Frederick fails to do so in this case.

In support of Frederick's pretext claim, she relies on the fact that she worked at the Aurora Office for approximately two weeks prior to her termination. This fact, however, is not material to the issue of pretext. Although the record is unclear as to why this misunderstanding occurred, the record clearly shows that the Aurora Office supervisors believed Frederick was a transfer employee when she began working on August 5, 1995. When Aurora Office supervisors discovered that Frederick was a newly hired employee (as opposed to a transfer employee), they corrected the mistake by following USPS rules, terminated Frederick's employment, and immediately rehired her as a new employee. As a newly hired employee, USPS required Frederick to submit to a drug test and to complete a 90-day probation period consistent with USPS's established policy. Frederick has offered no evidence showing that USPS's legitimate, non-discriminatory reason for these actions, the USPS transfer policy, was a pretext for illegal discrimination. Therefore, Frederick fails to show that a genuine triable issue of material fact exists as to her August 16, 1995 termination and USPS's subsequent employment actions.

### c. Duties as Probationary Employee:

Frederick next argues that USPS's failure to train, evaluate or inform her of her duties as a probationary employee (regarding her second 90-day probation period) is disparate treatment. To establish her *prima facie* case of disparate treatment, Frederick must show that these actions constitute a materially adverse change in the terms and conditions of her employment. See Rabinovitz, 89 F.3d at 438.

In this instance, Frederick fails to establish a *prima facie* case. Frederick argues she was denied the same training and information regarding her duties as a mail carrier as those given to her non-white male counterparts. Although this may be true, the fact that Frederick was not given the same training as her non-white, male counterparts does not, by itself, reach the level of a materially adverse employment action. The overriding emphasis is that the action must have a *materially* adverse effect on the conditions of employment. Haugerud, 259 F.3d at 690-91 (emphasis added). Here, there is nothing in the record indicating these actions constitute a material change in the conditions of Frederick's employment. Frederick had just successfully completed a 90-day probation period while employed at the Phoenix Office. She was trained and knew the job. USPS required Frederick to complete an additional 90-day probation period because of a USPS transfer policy, not because of Frederick's incompetence. In fact, when Frederick started working at the Aurora Office as a probationary employee, she was given more responsibility than other probationary employees because she had received previous training. Frederick's job duties after August 16, 1995 were essentially the same as they were before she was terminated. Thus, that USPS did not retrain Frederick or repeat a description of her job duties does not, in and of itself, constitute a materially adverse change in the conditions of her

11

employment. Therefore, Frederick has failed to establish a *prima facie* case of disparate treatment as to these actions, and the Court need not proceed any further with its analysis of this claim.

### d. 30-Day Performance Review:

Frederick also alleges that USPS's failure to give her a required 30-day performance evaluation is disparate treatment. Under USPS rules, supervisors are required to complete a review of all probationary mail carriers, which involves the completion of form PS 1750 ("Form PS 1750"), after 30 days.[3] Again, in order for Frederick to establish a *prima facie* case of disparate treatment, she must show that this employment action constitutes a materially adverse change in the terms and conditions of her employment. See Rabinovitz, 89 F.3d at 488.

Here, Frederick makes no argument as to why this action, by itself, constitutes a material change in the terms and conditions of her employment. Additionally, Frederick references no authority in support of her conclusion. Instead, Frederick focuses her argument on the fact that USPS may have completed PS 1750 after she was terminated. Thus, Frederick fails to offer evidence showing why USPS's failure to conduct a timely 30-day performance review was a material change in the terms and conditions of Frederick's employment. The Court has already noted that, because of her previous experience with USPS, USPS may have had a reason to treat Frederick somewhat differently from other probationary employees. Even if USPS never completed a 30-day performance review for Frederick, this failure alone would not constitute a material change in the terms and conditions of Frederick's employment. As a result, Frederick fails to establish a *prima facie* case of disparate treatment as to this employment action.

---

[3] The record indicates a dispute as to whether or not Defendant completed Form PS 1750 prior to Frederick's September 21, 1995 termination. Thus, for purposes of this motion, the Court will assume Defendant did not complete Frederick's Form PS 1750 prior to her termination.

### e. Statement by Fred Alvis:

Frederick claims, as a result of a statement made to her by Aurora Office Supervisor Fred Alvis, that USPS intentionally took an adverse action against her resulting in disparate treatment. Frederick claims that sometime in the last week of August, 1995, in response to a question she asked Alvis regarding advancement at USPS, Alvis responded ". . . that is the problem with women, they always want to get ahead . . . ." USPS denies Alvis made this statement. Frederick's only evidence of this fact is that of her own self-serving deposition testimony. Such statements are not sufficient to create a genuine issue for trial. Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1062 (7th Cir. 2000). Additionally, although Frederick claims other mail carriers were present to the conversation, Frederick is unable to recall the names of any of the witnesses. Nevertheless, in an abundance of caution, the Court will assume that Alvis did make this statement to Frederick. See Fed. R. Civ. P. 56(c).

Assuming that Alvis made the statement to Frederick, the Court must determine whether this statement, by itself, constitutes an adverse employment action. The case law regarding isolated comments about an employee's sex or race is quite clear. Unless *extremely serious*, a single offhand comment, by itself, is not an adverse employment action. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (emphasis added). Although Alvis' comment conveys a general negative connotation toward women in the workplace, it does not rise to the level of an extremely serious incident amounting to discriminatory changes in the terms and conditions of Frederick's employment. There is no racial connotation. See id. (indicating that sufficiently demanding standards for judging hostility are necessary to "ensure that Title VII does not

13

become a 'general civility code.'"). Therefore, Frederick has failed to establish a *prima facie* case of disparate treatment as to this employment action.

### f. Statement by Sam Jiardini:

Additionally, Frederick claims USPS took an adverse action against her resulting in disparate treatment when Sam Jiardini, an Aurora Office Supervisor, told her not to file a Worker's Compensation claim after she injured herself while exiting a postal vehicle.[4] USPS claims it is not aware of any such incident and denies Jiardini made such a statement. Again, Frederick's only evidence of the incident is that of her own self-serving Affidavit. Such statements are not sufficient to create a genuine issue for trial. Pettit, 211 F.3d at 1062. Nevertheless, for purposes of this motion, the Court will assume that Jiardini made this statement to Frederick. See Fed. R. Civ. P. 56(c).

Assuming Jiardini made this statement to Frederick, the Court must determine whether this statement, by itself, was an adverse employment action. There is nothing in the record indicating that it was. The Court has already noted that a single, offhand comment, if extremely serious, could constitute an adverse employment action under the right circumstances. See Faragher, 524 U.S. at 788. However, Jiardini's statement fails to qualify. A statement advising an employee not to file a Worker's Compensation claim, by itself, is the type of extremely serious statement that could materially alter the terms and conditions of one's employment. Thus, Jiardini's statement fails to qualify as an adverse employment action under Title VII, and Frederick fails to establish a *prima facie* case of disparate treatment in this instance.

---

[4] This postal vehicle issue is unrelated to the September 19, 1995 collision.

**g. September 21, 1995 Termination:**

Finally, Frederick claims USPS took an adverse employment action against her resulting in disparate treatment when it terminated her employment on September 21, 1995. This termination occurred after Frederick was involved in a vehicle accident while serving her second 90-day probation period. The Court has already noted that the termination of one's employment is usually a materially adverse change in the terms and conditions of one's employment. See Crady, 993 F.2d at 136. Thus, for purposes of this motion, Frederick has met the third requirement of her *prima facie* case of disparate treatment.

To establish the fourth element of her *prima facie* case of disparate treatment, Frederick must show that other similarly situated employees were treated differently than she. Robin, 200 F.3d at 1090. Frederick offers evidence of two instances in which USPS did not fire non-white male probationary employees for their involvement in vehicle accidents. First, Armando Alanis, a Hispanic male, was involved in a vehicle accident while on probation at the Aurora Office in 1995. Second, Chadwick Bledsoe, a black male, was also involved in a vehicle accident while on probation at the Aurora Office in 1995. Frederick claims USPS retained Alanis or Bledsoe because of their race or sex.

The parties do not dispute that both Alanis and Bledsoe were involved in vehicle accidents while on probation, and that USPS did not terminate their employment as a result of these accidents. However, the parties disagree as to the reasons why USPS did not terminate their employment. Frederick offers much argument as to why Alanis and Bledsoe were not terminated, but she offers little evidence to support her arguments. Additionally, Frederick claims that both Alanis and Bledsoe were "ticketed" for causing the accidents, but she offers no

15

evidence to support this assertion. A ticket is not evidence of guilt or fault. Nevertheless, for purposes of this motion, the Court will assume that both Alanis and Bledsoe were at fault in causing their vehicle accidents and that USPS failed to terminate Alanis and Bledoe's employment as required by South Suburban's unwritten policy. See Fed. R. Civ. P. 56(c). Thus, as to the September 21, 1995 termination, the Court assumes that Frederick has established her *prima facie* case of disparate treatment.

Once Frederick has established a *prima facie* case of disparate treatment, the burden of persuasion shifts to USPS to show a legitimate, non-discriminatory reason for the termination. Sirvidas, 60 F.3d at 377-78. In this case, USPS claims it terminated Frederick's employment because of an unwritten rule applying to all South Suburban Post Offices. The rule requires USPS to terminate any probationary mail carrier involved in a vehicle accident if there is no clear evidence exonerating the probationary employee. Since 1990, USPS has terminated sixteen of nineteen probationary mail carriers for their involvement in vehicle accidents. (Def. Mot. for Summ. J., Ex. 6.) Here, USPS claims it terminated Frederick's employment not because she is a white female, but because she violated South Suburban's unwritten rule as to vehicle accident involvement by probationary employees.

Once the employer offers a legitimate, non-discriminatory reason for its action, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for the alleged discrimination. Sirvidas, 60 F.3d at 378. In this instance, Frederick asserts that this unwritten rule does not exist. In fact, in the same year that Frederick's vehicle accident occurred, Frederick offers evidence of two instances in which the Aurora Office management failed to follow such a policy (Alanis and Bledsoe).

16

Frederick argues that USPS's proffer of this alleged unwritten rule is a pretext for USPS's discriminatory conduct. The Court, however, disagrees with Frederick.

In this case, the material issue is whether USPS lied about the existence of the unwritten rule regarding probationary mail carriers in order to conceal their discriminatory intent. USPS offers evidence establishing that since 1990, it terminated sixteen of nineteen South Suburban probationary mail carriers who were involved in vehicle accidents. Frederick fails to offer any evidence refuting this fact. Frederick only argues that these "bare numbers" provided by USPS are irrelevant to show that USPS applied the unwritten rule to all probationary employees "across the board." (Pl.'s Mem. in Sup. of her Resp. to Def.'s Mot. for Summ. J. at 13.) Frederick argues that USPS could have terminated all of the other probationary employees because they were "driving under the influence" or committing "vehicular homicide" at the time or their accidents. Id. Frederick's reasoning is faulty because even if the assumption she makes is true, the burden is on Frederick, not USPS, to produce evidence of pretext. See Sirvidas, 60 F.3d at 377-78. Additionally, although Frederick does offer evidence of two non-white male probationary employees who were not terminated for their involvement in vehicle accidents, the fact remains that since 1990, South Suburban has terminated sixteen of nineteen probationary employees who were involved in vehicle accidents.

Furthermore, the two cases Frederick relies on both involved special circumstances that are not present in this case. Alanis' vehicle accident occurred after he was given his final review on the 80th day of his probation period. Prior to the occurrence of the accident, the Aurora Office supervisors had already welcomed Alanis to the Post Office as a non-probationary employee. Bledsoe, on the other hand, involved a supervisor who failed to do his job properly.

Fred Alvis failed to report the incident to his supervisors until after Bledsoe had completed his 90-day probation period. Alvis' act of not reporting the incident to his supervisors allowed Bledsoe to receive the protection of grievance procedures provided by a collective bargaining agreement between USPS and its union employees. These protections discouraged Postmaster Hickey from taking action against Bledsoe. The record further shows that Hickey admonished Alvis for his actions in the Bledsoe incident. None of these special circumstances present in Alanis or Bledsoe's case are present in Frederick's case.

Thus, the evidence shows that USPS applies the unwritten policy to probationary employees in all cases except when unique circumstances are present. Frederick has failed to show that USPS's legitimate, non-discriminatory reason for her termination is pretextual. As a result, the Court finds that USPS's proffered reason for terminating Frederick on September 21, 1995 was an honest one. Because USPS's proffered reason was honest, the Court need not look further into the matter to determine whether the decision was accurate, wise or well considered. See Stewart, 207 F.3d at 378.

Therefore, the Court finds that no genuine issue of material fact exists as to any of the seven employment actions Frederick claims resulted in disparate treatment under Title VII. The Court will next analyze whether these seven employment actions, when viewed together, support Frederick's hostile work environment claim under Title VII.

**B. Title VII - Hostile Work Environment Claim:**

In addition to Frederick's individual disparate treatment claims, Frederick argues that the actions discussed above, when considered together, constitute a hostile work environment. To establish a hostile work environment claim under Title VII, a plaintiff must show that his work

18

environment is so pervaded by racial [and sexual] harassment that the terms and conditions of his employment are altered. Gleason, 118 F.3d at 1143-44. "The workplace that is actionable is the one that is 'hellish.'" Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997). "'[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.'" See Gleason, 118 F.3d at 1143-44 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)); see also Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986) (noting that "[c]asual comments, or accidental or sporadic conversation," cannot sustain a claim of racial harassment). Allegations of isolated or stray comments do not constitute an actionable hostile workplace claim. See Brill v. Lante Corp., 119 F.3d 1266, 1274 (7th Cir. 1997); see also North v. Madison Area Ass'n for Retarded Citizens-Development Ctrs, Corp., 844 F.2d 401, 409 (7th Cir. 1988) (noting that exposure to one or two isolated epithets is not sufficient to constitute a hostile work environment); but see Hunt v. City of Markham, Ill., 219 F.3d 649, 652-53 (7th Cir. 2000) (stating that a stray remark made by decision maker, or someone that provides input into the adverse employment action around the time of the action complained of, may raise an inference that the decision maker was influenced by improper motives).

In this case, Frederick points to seven different instances, the same seven instances which Frederick claimed were adverse employment actions, that amount to a systematic and continuous pattern of unlawful discriminatory treatment. As such, Frederick claims these instances created a work environment that is actionable under Title VII. Once again, these seven instances are: (1) the August 16, 1995 termination and drug test; (2) the second probation period; (3) the failure to train and inform; (4) the failure to complete a timely 30-day performance review; (5) the

19

statement by Fred Alvis; (6) the statement by Sam Jiardini; and (7) the September 21, 1995 termination.

Of these seven instances, however, only one suggests that USPS acted wrongly because of Frederick's sex or race. This is the incident where USPS Supervisor Fred Alvis allegedly stated to Frederick "that is the problem with women, they always want to get ahead." Even if the Court were to agree that Frederick subjectively believed the workplace was offensive, this statement alone does not produce an objectively hostile work environment. See Brill, 119 F.3d 1274 (stating that allegations of isolated or stray comments do not constitute an actionable hostile workplace claim); see also Logan v. Kautex Textron North America, 259 F.3d 635, 641 (7th Cir. 2001) (holding that one comment made in the context of random office banter and two others made not casually related to the decision making process do not constitute an objective hostile work environment); Patt v. Family Health Systems, Inc., 280 F.3d 749, 754 (7th Cir. 2002) (indicating that two offensive statements made by a supervisor to an employee, including "the only valuable thing to a woman is that she has breasts and a vagina" are "too isolated and sporadic" to reach the level of a hostile work environment).

Additionally, although Alvis was a supervisor at USPS at the time of the alleged statement, there is nothing in the record suggesting Alvis participated in any of the employment actions taken against Frederick. Although the record is not clear as to who made the final decision to terminate Frederick on September 21, 1995, Frederick does not claim Alvis participated in the decision. Frederick only alleges that Hickey, Morrow, Cole, or Jiardini were the managers possibly involved in the decision to terminate her employment. Compare Hunt, 219 F.3d at 652-53 (stating that a stray remark made by decision maker, or someone that

provides input into the adverse employment action around the time of the action complained of, may raise an inference that the decision maker was influenced by improper motives).

The Court finds that no genuine issue of material fact exists as to Frederick's Title VII hostile work environment claim. Frederick fails to produce sufficient evidence showing that her work environment was so pervaded by racial and sexual harassment that the terms and conditions of her employment were altered. See Gleason, 118 F.3d at 1143-44. As a result, USPS's motion for summary judgment on Count VI of Frederick's Complaint is granted.

## C. Plaintiff's Title VII Retaliation Claims (Count V):

Finally, in Count V of her complaint, Frederick claims USPS intentionally retaliated against her after she filed her complaint with the EEOC. Specifically, Frederick points to two actions taken by USPS that constituted retaliation: (1) USPS "lied" to the Arizona Department of Economic Security ("ADES") to prevent Frederick from receiving unemployment benefits; and (2) USPS employees falsely informed the Postal Police that Frederick threatened to kill USPS employees. In its motion, USPS moves for summary judgment on both of Frederick's retaliation claims.

In order to establish a Title VII retaliation claim, the plaintiff must establish that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action by her employer; and (3) a causal link exists between the protected expression and the adverse action. Oest v. Illinois Dept. of Corrections, 240 F.3d 605, 615-16 (7th Cir. 2001); Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996). If the employer argues that the employee suffered no harm as a result of the employee's alleged retaliation claims, the employee is obligated to produce evidence

21

showing that the employer's actions resulted in injury to the employee. <u>Veprinsky v. Fluor Daniel, Inc.</u>, 87 F.3d 881, 894-95 (7th Cir. 1996).

Here, Frederick argues that the alleged acts of retaliation occurred after the September 21, 1995 termination. The Seventh Circuit has held that a plaintiff may bring a retaliation claim under Title VII for acts that occurred after the plaintiff's termination. <u>Morgan v. Joint Admin. Bd.</u>, 268 F.3d 456, 458 (7th Cir. 2001); <u>see</u> <u>Veprinsky</u>, 87 F.3d at 994-95.

### 1. Statement to ADES Regarding Unemployment Benefits:

First, Frederick alleges that USPS retaliated against her by lying to ADES to prevent or delay Frederick's receipt of unemployment benefits. Specifically, Frederick claims Gregg Morrow lied to ADES and informed the agency that Frederick was fired for misconduct.

Before considering whether USPS lied when protesting Frederick's unemployment benefits, the Court must address whether USPS's act of protesting Frederick's unemployment benefits was an adverse employment action. An employer has a right to protest an employee's unemployment benefits if it reasonably believes it has legitimate grounds to do so. Thus, USPS's act of protesting Frederick's unemployment benefits, alone, was not an adverse employment action.

Next, Frederick argues that USPS lied when it protested her unemployment benefits. Assuming that such lies could be an adverse action, Frederick fails to produce sufficient evidence of a lie. Frederick offers three pieces of evidence: (1) an ADES Unemployment Insurance Program Protest Form ("ADES Protest Form"); (2) an ADES Notice to Claimant ("ADES Notice"); and (3) the deposition testimony of Gregg Morrow. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. P.) USPS completed the ADES Protest Form on September 29, 1995.

Frederick claims this form falsely states that USPS discharged Frederick for misconduct, and that USPS submitted this form in retaliation of her filing a complaint with the EEOC. Assuming this form is admissible evidence, the court finds that the evidence does not support Frederick's claim. This form does not indicate that USPS fired Frederick for misconduct. The form simply indicates that USPS discharged Frederick and that it wished to protest her claim for unemployment benefits. Thus, the evidence here is not sufficient to lead a reasonable trier of fact to believe that USPS lied in retaliation for Frederick filing a complaint with the EEOC.

Second, Frederick offers the ADES Notice as proof of a lie. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. P.) The ADES Notice is dated October 14, 1995, and it states that Frederick is eligible for unemployment benefits. The ADES Notice also states "[a]lthough your employer contends you were discharged for misconduct, no evidence has been presented to support this contention." Id. Frederick construes this statement as evidence of retaliation. However, the notice fails to support Frederick's claim for two reasons. First, the ADES Notice is inadmissible hearsay. Fed. R. Evid. 801, 202. Second, even if the Court were to admit the ADES Notice into evidence, it does not support Frederick's claim that USPS made a false statement to ADES. Although the ADES Notice states that USPS contends Frederick was discharged for misconduct, it does not indicate USPS's specific allegation of misconduct. Thus, the ADES Notice by itself, without other evidence suggesting USPS's reasons for the protest, is too attenuated to show that USPS was lying.

Third, Frederick offers Gregg Morrow's deposition testimony as proof of the fact that USPS lied to ADES. Specifically, Frederick claims Morrow admitted he was the individual who protested Frederick's unemployment insurance claim because she was terminated for

misconduct. After reviewing Morrow's deposition testimony, the Court finds Frederick's evidence does not support her claim. Morrow's testimony simply shows Morrow could not remember why he protested Frederick's unemployment benefits after she was terminated. The testimony does not show that Morrow alleged misconduct as the basis of his complaint or that Morrow lied to ADES. Thus, Morrow's deposition testimony is insufficient evidence to support Frederick's retaliation claim.

Finally, even if the Court construes Frederick's evidence as proof of her claim, Frederick fails to show that she suffered any harm as a result of USPS's actions. See Veprinsky, 87 F.3d at 894-95 (indicating that an employee's retaliation claim will not survive the employer's motion for summary judgment absent evidence showing that some type of concrete injury occurred). The ADES Protest Form and Morrow's deposition testimony do not show that Frederick suffered any injury as result of USPS's actions. Also, the ADES Notice clearly shows that ADES approved Frederick's unemployment compensation benefits on October 14, 1995. Frederick was fired on September 21, 1995. Thus, ADES approved Frederick's unemployment benefits in less than one month from the date of the termination.

Hence, Frederick fails to show that a genuine issue of material fact exists as to her claim regarding USPS's alleged false statement to ADES contesting unemployment benefits in retaliation for her making an EEOC complaint.

## 2. Statement to the Postal Police:

Second, Frederick alleges that USPS retaliated against her for filing an EEOC complaint by falsely informing the Postal Police that Frederick threatened to kill USPS employees on September 21, 1995. To determine whether Frederick has established a *prima facie* case of

24

retaliation, the Court must determine whether Frederick has offered sufficient evidence to support her claim.

In this instance, Frederick fails to offer any evidence suggesting that any USPS employee made such a statement to the Postal Police. First, Frederick claims Gary Cole admitted to making such a statement in his deposition testimony. However, the record clearly does not support this assertion. The record only shows that Cole informed Frederick, after she was fired, that he would be forced to call the police if Frederick did not leave the building. (Def.'s Mot. for Summ. J., Ex. 1 at 162.) The record does not indicate that Cole actually called the Postal Police or made any statements to them regarding Frederick.

Second, Frederick claims that Cole told Margaret Matheny, the Aurora Office Union Steward, he was going to call the police because Frederick threatened to kill USPS employees. Again, Frederick offers insufficient evidence to support this assertion. Frederick's only evidence of this fact comes from her self-serving deposition testimony. Such statements are inadmissible as hearsay. See Fed. R. Evid. 801, 802. Inadmissible evidence will not support a claim for summary judgment. Bombard, 92 F.3d at 562. Therefore, USPS's motion for summary judgment as to Count V of Frederick's complaint is granted.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment. IT IS SO ORDERED.

ENTER: _Charles Norgle_

Charles R. Norgle, Sr.
District Court Judge

DATED: _11/25/05_

25